IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CITRUS WORLD, INC. D/B/A FLORIDA'S NATURAL GROWERS<br><br>    Plaintiff<br><br>        v.<br><br>FERRAIUOLI TORRES MARCHAND & ROVIRA, P.S.C.; FERRAIUOLI LLC; EUGENIO TORRES OYOLA AND THE LEGAL CONJUGAL PARTNERSHIP COMPOSED WITH HIS WIFE, JANE DOE; LAURA BELENDEZ FERRERO AND THE LEGAL CONJUGAL PARTNERSHIP COMPOSED WITH HER HUSBAND, JOHN DOE; AND INSURANCE COMPANIES A, B, C, AND D<br><br>    Defendants | CIVIL NO.: 11-2118<br><br><br><br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

Comes Now Plaintiff, Citrus World, Inc. d/b/a Florida's Natural Growers, through its undersigned counsel, and sues the above named Defendants alleging and stating as follows:

### I. Parties, Jurisdiction, and Venue

1.1.    Pursuant to Title 28, United States Code, Section 1332(a)(1), jurisdiction over this action is proper because the parties on either side of this litigation are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorney's fees.

1.2.    Pursuant to Title 28, United States Code, Section 1391(a), venue of this action is proper in this district because a substantial part of the events, acts or omissions giving rise to the claims occurred in this district.  Trial by jury is demanded as to all of the claims for damages asserted herein.

1.3.     Plaintiff Citrus World, Inc. d/b/a Florida's Natural Growers (hereinafter referred to as "FNG"), is a cooperative of citrus growers organized and existing pursuant to the laws of Florida, which has its principal state of business in Lake Wells, Florida.

1.4.     Defendant Ferraiuoli Torres Marchand & Rovira, P.S.C. (hereinafter referred to as the "FTMR") is a professional services corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, which provided legal services to FNG and which has its principal place of business in Hato Rey, Puerto Rico.

1.5.     Defendant Ferraiuoli LLC (hereinafter referred to as "Ferraiuoli") is a limited liability company organized and existing under the laws of of the Commonwealth of Puerto Rico with its principal place of business therein, who either merged with FTMR after its incorporation in February of 2011 or is FTMR's successor in interest.

1.6.     Defendant Eugenio Torres Oyola (hereinafter referred to as "ETO") is an attorney who is a founding member and shareholder and/or capital partner of both FTMR and Ferraiuoli and one or their managing partners. ETO is a citizen and resident of the Commonwealth of Puerto Rico. Upon information and belief, it is alleged that ETO is married to Jane Doe, so named because her real name is unknown at present, with whom he has constituted the Legal Conjugal Partnership that is also a defendant to this action.

1.7.     Defendant Laura Beléndez Ferrero (hereinafter referred to as "LBF") is an attorney who is a member or an employee of FTMR and/or Ferraiuoli. LBF is a citizen and resident of the Commonwealth of Puerto Rico. Upon information and belief, it is alleged that ETO is married to John Doe, so named because his real name is unknown at present, with whom she has constituted the Legal Conjugal Partnership that is also a defendant to this action.

1.8.    Defendants Insurance Companies A, B, C, and D, so named because their real names are unknown at present, are insurance companies organized under the laws of states other than Florida with their respective places of business in states other than Florida, who had issued legal malpractice policies in favor of one or more of the other defendants to this action and/or third parties, which cover events and damages as those claimed by FNG as are more particularly set forth herein below.

## II. The Facts

2.1.    FNG is a cooperative of citrus fruit growers that produces citrus juices that are processed, packaged and sold under the Florida's Natural® brand. FNG's juices are "not-from-concentrate" which means that they are freshly squeezed.

2.2.    On or about the end of September or beginning of October of 2004, FNG and Méndez & Co., Inc. (hereinafter referred to as "Méndez"), a Puerto Rico corporation dedicated to the distribution of brand-name and private labels of foods, beverages, beer, wine and spirits within the Commonwealth of Puerto Rico, signed a Partial Distribution Agreement (hereinafter referred to as "PDA") whereby FNG appointed Méndez as a non-exclusive distributor of several FNG products to non-foodservice accounts located in Puerto Rico, which included, but were not limited to, chain supermarkets, independent supermarkets, wholesalers, distributors, club stores, drugstores, and other retailers.

2.3.    The PDA executed by the parties was dated September 22, 2003 and was effective on September 1, 2003. Pursuant to the terms of the PDA, Méndez's appointment was to last a period of two (2) years.

2.4.    During the term of the PDA, the parties entered into various Marketing Plans which, FNG understood and contended, were part of the PDA.

2.5.     Although the term of the PDA expired on September 1, 2005, the parties kept conducting business uninterruptedly after that date in the same manner and under the same terms that were in effect during the effective dates of the PDA and the Marketing Plans.

2.6.     In early 2007, FNG began to have concerns about the way in which Méndez was handling the distribution of its products. Notwithstanding numerous written communications sent to Méndez on that subject, FNG's concerns were not resolved.

2.7.     On or about August of 2009, FNG presented to Méndez a new proposed distribution and marketing agreement.  Méndez countered with a counter-proposal that was not acceptable to FNG.

2.8.     On or about October of 2009, FNG retained the services of FTMR to advise FNG about the legal options it had in light of the business relationship that it had had with Méndez since 2003 and the standstill that had arisen in the conversations and negotiations conducted between the parties geared to the execution of a new distribution and marketing agreement.

2.9.     At the time of the retention of FTMR, the latter represented to FNG that it had ample experience with Puerto Rico´s Dealer´s Protection Act, also known as Law 75, and that LBF had previously handled numerous cases/disputes pertaining to Law 75. FNG decided to retain FTMR relying on those representations.

2.10.     On or about October 27, 2009, David Latham, Esq., outside counsel for FNG, sent an e-mail to FTMR posing a series of questions regarding the nuances of Law 75 and requesting FTMR a legal opinion on a number of issues pertaining to the existing relationship between FNG and Méndez. One of the questions posed was: "Through what means can we get out of the current Agreement [with Méndez]?"

2.11.   On or about November 16, 2009, LBF prepared a Memo in FTMR's letterhead and addressed to Mr. Latham in which she responded to the questions posed in his October 27, 2009 e-mail. Regarding the specific question as to how FNG could "get out" of its PDA with Méndez, LBF responded as follows:

> [C]ase law has stated that when a contract does not specify the length of time for the duration of the distribution agreement, "the two parties to the same remained at liberty to rescind the agreement and bring to an end the commercial relationship established thereunder at any time that they might with to do so." <u>Castillo v. Smart Product</u>, 289 F. Supp. 138 (D.P.R. 1968).

> It can be argued that since the relationship has continued without any additional agreement being executed, that as of today, the Contract does not specify the term, thus, it is indefinite. As such, FNG would be able to terminate the relationship, for "to construe the agreement as forbidding the parties to the same from bringing it to an end by the unilateral action of either one of them would be tantamount to compel the plaintiff and defendant to maintain the agreement and to remain legally bound thereunder for an indefinite period of time, unless and until both parties agree on the termination thereof. Any such construction of the distribution agreement must be rejected because it would run contrary to universally accepted principles of law that are rooted in the constitutional provision against involuntary servitude." *Id*.

2.12.   It is alleged upon information and belief that ETO examined the November 16, 2009 Memo by LBF, was in agreement with the opinions expressed therein and/or authorized her to send it to Mr. Latham on behalf of FTMR.

2.13.   Prior to the issuance of the above cited written legal opinion, FNG provided to FTMR evidence that Méndez had committed various material breaches of the Marketing Agreement that were part and parcel of the essential terms of the PDA.

2.14.   LBF sent the November 16, 2009 Memo to Mr. Latham by e-mail the following day. That same day, Mr. Latham forwarded the e-mail and the Memo to FNG's principals, who, relying on the opinion stated therein, concluded that the PDA could be terminated at will and decided to terminate the PDA with Méndez.

2.15    On or about November 18, 2009, FNG informed Méndez that the PDA had been terminated. Immediately thereafter, FNG retained the services of a new distributor for the products that had the the object of the PDA with Méndez.

2.16.    On or about December 16, 2009, Méndez filed suit against FNG in this Court, under cause no. 09-2251 (JAF), alleging, *inter alia*, that FNG had terminated the distribution Agreement between the parties without just cause in violation of Law 75 and claiming damages in excess of $1,270,000.00.

2.17.    FNG entrusted the defense of that claim to FTMR, who, on or about January 12, 2010, issued a Memo addressed both to FNG's Vice President of Sales and Marketing and to FNG's International Sales Manager, in which FTMR furnished its "legal opinion regarding the Complaint" filed by Méndez against FNG and which included "a comprehensive analysis of the facts under Act 75, as well as our [FTMR's] proposed legal strategy for the answering of the Complaint."

2.18.    In the January 12, 2010 Memo, FTMR reiterated the opinion that if had previously provided to FNG in the November 16, 2009 Memo to the effect that "when a contract does not specify the length of time for the duration of a distribution agreement, 'the two parties to the same remained at liberty to rescind the agreement and bring to an end the commercial relationship established thereunder at any time that they might wish to do so.'" FTMR further opined that "FNG could argue that given that the expiration date had passed, and in spite that the parties continued the relationship, the Agreement had expired since September 1, 2005, or in the alternative, that since the term had expired the Agreement continued in force with an indefinite term and therefore could have been terminated at will, as it was."

2.19.   The January 12, 2010 Memo also included a section with a series of recommendations regarding the procedural strategy for the defense of the claim filed by Méndez, in which FTMR stated that:

> FNG has to file on or before February 4, 2010 the Answer to the Complaint denying the allegations as herein stated. Moreover, FNG can and should file a Counterclaim against Mendez seeking a declaratory judgment declaring that FNG was entitled to cease the relationship with Mendez since the Agreement expired in September 1, 2005 or, in the alternative, the Agreement continued with an indefinite term and therefore could have been terminated at will, or even though the Agreement was still in force FNG had just cause to do so because: (i) Méndez's failure to comply with the invoicing process; (ii) failure to create a favorable market of FNG's products in Puerto Rico; and (iii) extreme over spending on the marketing budget.

2.20.   FNG accepted the recommendations made by FTMR in the January 12, 2010 Memo and requested FTMR to file the Answer to the Complaint on its behalf along the lines recommended. FNG decided to vigorously defend from the Complaint premised on its understanding that the Agreement was terminable at will.

2.21.   On or about February 19, 2010, FTMR did file the Answer to the Complaint on behalf of FNG, but failed to include the counterclaim that it had recommended. Thus, the various breaches of the Marketing Plans, which were part and parcel to the essential terms of the PDA were never set forth, as a counterclaim to Méndez, as FTMR stated they would do as part of FNG's defense strategy.

2.22.   The failure of FTMR to incorporate the terms of the Marking Plans and subsequent breaches of the Marketing Plans as part of the PDA ultimately precluded FNG from having any defense for termination of the PDA for just cause.

2.23.   Notwithstanding, a lengthy and costly discovery process ensued, during which FNG fully relied upon the direction and advice of FTMR to answer Request for Admissions and

Interrogatories that did not comply with the strategy and analysis by FTMR that the Marketing Plans were a crucial component to the essential terms of the two-page letter agreement and thus part of the PDA.  In fact, FTMR allowed answers to be filed by them stating that the two-page September 2004 letter agreement contained the full terms of the PDA, in direct contradiction to FTMR's own legal analysis and strategy.

2.24.   These negligent actions of FTMR in turn set the stage for Méndez to seek a Partial Summary Judgment asking the Court to determine that the two-page September 2004 letter agreement contained the only essential terms that Méndez was required to comply with under the PDA.

2.25.   The Court, in granting the Partial Summary Judgment based upon the pleadings filed by FTMR, eviscerated any defenses to the termination of Méndez.

2.26.   These actions by FTMR completely precluded FNG from being able to introduce any evidence of just cause due to Méndez' numerous breaches of the Marketing Plans, which FTMR recognized as one of FNG's strongest points in defending the action brought by Méndez.

2.27.   On or about November 23, 2010, FTMR sent a letter by e-mail to FNG's principals and outside counsel discussing its views of the discovery process and making a series of observations and recommendations that had not been raised in either the Memos dated November 16, 2009 and January 12, 2010. Moreover, the November 23, 2010 letter dropped the argument that the PDA with Méndez could be terminated at will.

2.28.   On or about December 29, 2010, ETO sent an e-mail to FNG's outside counsel announcing that FTMR had "brought to our litigation team attorney Rafael Escalera who teaches Act 75 seminars and courses in Puerto Rico and is one of our foremost authorities in the matter" in order to assist FTMR in the "just cause analysis" and defense of the Méndez lawsuit.

2.29.   Both communications raised a myriad of concerns in both FNG's principals and outside counsel about FTMR's knowledge and skill in Law 75 matters and about the appropriateness and trustworthiness of FTMR's legal opinions regarding FNG's capability to terminate the PDA with Méndez at will.

2.30.   Based on those concerns, FNG did not authorize the retention of the Law 75 expert named by FTMR. Instead, FNG retained the services of a the law firm of Goldman Antonetti and Córdova, P.S.C. (hereinafter referred to as "GAC"), to obtain a second opinion about the intricacies of Law 75 and the prospects of the defenses raised as per the opinions previously expressed by FTMR.

2.31.   As a result of that second opinion, FNG came to the realization that the legal opinions by FTMR, ETO and LBF to the effect that the PDA with Méndez was terminable at will, upon which it had relied, first, to terminate the PDA, and, second, to vigorously defend the judicial action instituted by Méndez after its termination, had been legally mistaken. The most necessary retention of GAC forced FNG to incur in additional legal expenses that it would not have otherwise incurred had FTMR, ETO and LBF not provided flawed legal opinions and advise.

2.32.   After such a realization, FNG further realized that its only option was to settle the Méndez action, which it proceeded to do, at a substantial cost, through a stipulation filed with this Court on or about April 25, 2011.

### III. Claims for Damages

3.1.   FTMR, ETO and LBF incurred in professional malpractice when they mistakenly opined, on at least two separate occasions, that FNG was able to terminate the PDA with Méndez at will. FTMR, ETO and LBF were also negligent by failing to file the recommended

counterclaim that would have allowed FNG to incorporate the Marketing Plans into the PDA and to raise the material breaches of the former as the just cause required by Law 75 for the termination of the latter.

3.2.    Unsuspectingly, FNG relied upon the mistaken legal opinions and advise furnished by FTMR, ETO and LBF and upon their represented skill and purported experience, first, to terminate the PDA with Méndez and, second, to vigorously defend what turned out to be an unbeatable claim due to their failure to file the counterclaim that they had recommended and FNG had agreed to assert.

3.3.    As a direct and proximate result of the professional malpractice incurred by FTMR, ETO and LBF and of their faulty and/or negligent acts and omissions, as stated throughout this Complaint, FNG suffered extensive economic damages, including but not limited to legal and litigation expenses, attorney's fees and payment of indemnifications to Méndez and the new distributor. All those economic damages will be ultimately quantified by the jury, but are conservatively estimated in an amount not less than ONE MILLION FOUR HUNDRED THOUSAND DOLLARS ($1,400,000.00).

3.4.    Pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. secs. 5141 and 5142, FTMR, ETO and LBR are jointly and severally liable to FNG for all of the damages caused by their faulty and/or negligent acts and omissions and/or those of their employees or members in the provision of a mistaken legal advice as more particularly set forth above. Ferraiuoli is also liable to FNG for all of the damages caused by the faulty and/or negligent acts and omissions of FTMR, ETO and/or LBF insofar as it is the successor in interest for FTMR and/or the surviving entity in the merger with FTMR.

3.5.    The Defendant Legal Conjugal Partnerships composed by ETO and LBF with their respective spouses are equally liable to FNG for the damages caused by the faulty and/or negligent acts and omissions by each of ETO and LBF, as previously described, given that the defendant Legal Conjugal Partnerships benefited economically from their practice of the legal profession.

3.6.    Pursuant to Articles 20.010 and 20.030 of the Puerto Rico Insurance Code, 26 L.P.R.A. secs. 2001 and 2003, defendants Insurance Companies A, B, C, and D are directly, jointly and absolutely liable to FNG for all of the damages and amounts claimed herein, which were insured by the policies that each of them had issued and that covered acts, omissions and/or events, as the ones complained herein from.

WHEREFORE, FNG demands trial by jury and judgment in its favor and against the Defendants, jointly and severally, for all of the damages and amounts claimed herein, together with prejudgment interest, costs, and attorney's fees.

DATED: November 17, 2011.

S/Guillermo Ramos Luiña
GUILLERMO RAMOS LUIÑA
USDC NO. 204007

P. O. Box 22763, UPR Station
San Juan, PR 00931-2763
Tel. 787-620-0527
Fax 787-620-0039
gramlui@yahoo.com